HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **T-SCAN CORPORATION**, a Washington Corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> **ALFRESCO SOFTWARE AMERICAS, INC.,** a Delaware Corporation, <br><br> Defendant. | **Case No.: 2:11-cv-00255 JCC** <br><br> FIRST AMENDED COMPLAINT <br><br> JURY DEMAND |

Plaintiff T-Scan Corporation, a Washington corporation ("T-Scan" or "Plaintiff") brings this action for Fraud in the Inducement of a Contract, Breach of Contract, and Intentional Interference With Business Relationships against Defendant Alfresco Software Americas, Inc., a Delaware corporation ("Alfresco" or "Defendant"), and alleges as follows:

## I. THE PARTIES

1. Plaintiff T-Scan Corporation is a Washington corporation with its principal place of business in Seattle, Washington.

FIRST AMENDED COMPLAINT - 1

**CARPELAW PLLC**
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

2. Defendant Alfresco Software Americas, Inc. is a Delaware corporation with its principal place of business in Palo Alto, California.

## II. JURISDICTION AND VENUE

3. This Court has personal jurisdiction over the Defendant within the Western District of Washington because Alfresco is a Delaware corporation with its principal place of business in Palo Alto, California, and Plaintiff is a Washington corporation with its principal place of business in Seattle, Washington. 28 U.S.C. § 1332(a)(1).

4. This Court has diversity jurisdiction over T-Scan's claims because the parties are citizens of different states and the claims herein exceed $75,000, exclusive of attorneys' fees and costs. 28 U.S.C. § 1332.

5. This Court has supplemental jurisdiction over any state claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this district because all or a substantial part of the events or omissions giving rise to the claims occurred within this district. 28 U.S.C. § 1391(a)(2).

## III. FACTUAL BACKGROUND

7. Plaintiff T-Scan is a business that provides litigation support services and medical, legal and insurance records storage and retrieval.

8. T-Scan invests significant time, effort and money in enhancing its offerings in order to stay ahead of its competition in this very competitive business.

9. In early 2008, T-Scan determined that if it created a Web-based interface to its records storage database, the enhanced service would allow its existing customers to have ready access to their records stored on T-Scan's computers, and would allow T-Scan to attract new customers to subscribe to T-Scan's offerings.

10. T-Scan learned of Alfresco's open-source records storage and retrieval software ("Content Manager") and contacted Alfresco for the purpose of licensing the Alfresco Content Manager software.

1  11. After speaking with the Alfresco representative, T-Scan learned that the Content Manager would not serve all of T-Scan's needs, but being open-source software, it could easily be modified to serve T-Scan's needs.

12. Alfresco has created a "Partner Network Program" ("PNP") wherein it collaborates with other businesses who provide value-added services to further expand Alfresco's customer base.

13. The PNP is designed to provide partner organizations with the expertise to market, configure, customize and implement Alfresco solutions for customers worldwide.

14. Alfresco works with different categories of partners including those it categorizes as "System Integrators."

15. According to Alfresco's Web site, "System Integrators provide expertise consulting, integration and migration services for Alfresco content management solutions. All System Integrators have trained and certified Alfresco consultants on staff."

16. Alfresco informed T-Scan that BPA is a member of Alfresco's Partner Network Program and referred T-Scan to BPA.

17. Based in large part on Alfresco's touting BPA's alleged ability to satisfy T-Scan's needs, T-Scan contracted with BPA to acquire the software solution they needed to provide the new offerings it wished to make.

18. Beginning on or about May 14, 2008 and for some time thereafter, BPA presented numerous iterations of a proposal to T-Scan for a software solution for T-Scan's needs.

19. T-Scan and BPA entered into an agreement whereby BPA promised to create and deliver software specific to T-Scan's needs on a particular schedule, and T-Scan promised to pay an amount stated in the written agreement for the creation of the software.

20. In order to start the process, on June 6, 2008, BPA sought and received a $10,000 "mobilization advance" from T-Scan.

FIRST AMENDED COMPLAINT - 3

21. In reliance on Alfresco's representations that Alfresco, in combination with BPA, could satisfy T-Scan's needs, and BPA's representations that the project would be completed in less than two (2) months, T-Scan paid the first of the license fees to Alfresco that would allow them to use the Alfresco software in a two-computer "production" environment.[1]  The annual fee for such use was $30,000.

22. In order to get a good understanding of T-Scan's operation and needs, BPA sent one of its engineers to the T-Scan offices for two (2) weeks to gain that understanding.

23. The entire cost of the engineer being onsite at the T-Scan offices was borne by T-Scan, including, but not limited to, airfare, lodging and productivity time taken from T-Scan employees in order to provide the engineer with the knowledge he sought.  The two (2) week visit cost T-Scan $18,249.06, $14,400.of which was attributed to "software development."

24. Apparently, software development was initiated, and on September 3, 2008, BPA invoiced T-Scan for, and was paid, an additional $20,400.

25. T-Scan had begun to, and continued to create detailed specifications of its needs to "flesh out" for BPA detailed specifications of the project in order to answer the many questions BPA posed.  In effect, T-Scan was being required to do BPA's job for them because BPA seemed unable to grasp even such simple concepts as, among other things, providing a method for sales tax calculation in the invoicing module of the software.

26. Sometime in late September 2008, BPA approached T-Scan and stated that the many of features that had been proposed to be implemented using the Alfresco software could not, in fact, be implemented in Alfresco.  However, BPA stated, those features *could*

---

[1] A "production" environment is an environment where productive work occurs that supports the licensee's business.  The converse is a "development" environment that is used primarily to create and/or test software prior to putting the software into "production."

1 be implemented using another software platform ("Liferay") that T-Scan was already
2 using.

3     27. Relying on BPA's purported experience and expertise, coupled with
4 Alfresco's representations to T-Scan that BPA had at least one (1) certified and trained
5 Alfresco consultant on staff, T-Scan agreed to utilize that software platform.

6     28. In early October of 2008, and well over a month past the due date for
7 completion of the project, BPA produced yet *another* iteration of the proposal entitled, "A
8 Proposal to T-Scan for Alfresco Implementation."

9     29. This iteration ("2008-10") specifically excludes some significant
10 components of T-Scan's needs, but the time-to-finish had been extended to 22 weeks
11 (almost 3 times the original estimate), and the cost estimate rose drastically to $110,000.

12     30. Approximately one month later, BPA presented an updated proposal
13 ("2008-11") now titled "A Proposal to T-Scan for Alfresco Liferay Portal Implementation."

14     31. The 2008-11 had apparently split the user interface off as a separate item.
15 Now, to implement the portion of the original version of the proposal that BPA stated it
16 could not implement using the Alfresco software, BPA provided a time-to-finish of 15
17 weeks.

18     32. Assuming that progress was being made in the development effort, but
19 growing concerned the estimated seven week project had now stretched to six months,
20 T-Scan received another invoice from BPA in January 2009 for an additional amount of
21 $25,000 for work that, T-Scan believed at the time, had been completed. T-Scan paid that
22 amount, and concurrently renewed its annual license fee for the Alfresco software for
23 another $30,000.

24     33. On or about December 22, 2008, BPA produced an expanded version of the
25 "Proposal to T-Scan for Alfresco Liferay Portal Implementation" incorporating much of the
26 design work performed by T-Scan personnel ("2008-12-1").

FIRST AMENDED COMPLAINT - 5

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1   34.     Although T-Scan had, at this time, already paid BPA $44,800 as was
2  invoiced by BPA, BPA acknowledged only the initial $10,000 "mobilization fee" and
3  claimed that T-Scan had outstanding invoices in the amount of $25,031.
4   35.     BPA now estimated that the project was now going to take 30 weeks time-
5  to-finish and cost T-Scan $133,031.
6   36.     One week later, on December 30, 2008, BPA presented a slightly revised
7  version of its "Proposal to T-Scan for Alfresco Liferay Portal Implementation"
8  (2008-12-2").
9   37.     BPA had raised its estimate to 31 weeks to completion and the project that
10  was initially quoted as a seven week, $39,000 project was now quoted at a cost of
11  $136,631.
12   38.     Having yet to receive even a single component functional part of the overall
13  product, T-Scan indicated to BPA that T-Scan required some indicia of value received for
14  its investment to-date prior to remitting any further payment.
15   39.     For the next ten months or so, BPA uploaded various versions of the
16  software in development, whereupon, T-Scan employees would quickly determine that the
17  software was not functioning in the manner specified.  BPA was, in effect, requiring
18  T-Scan to incur significant additional costs of in-house computer staff to "test" BPA's
19  software.
20   40.     On December 9, 2009, not having received any functioning software
21  whatsoever from BPA, T-Scan took the steps necessary to prohibit further access by BPA
22  personnel to T-Scan's computers.
23   41.     After T-Scan cut off computer access to BPA, T-Scan hired another
24  programming consultant who is knowledgeable about the Alfresco software.
25   42.     After reviewing BPA's work, that engineer informed T-Scan that the
26  software provided by BPA was unusable.

FIRST AMENDED COMPLAINT - 6

43.     The engineer further indicated that, contrary to its representations to T-Scan, BPA had not made any custom modifications to the Alfresco software, and that the Alfresco software was in a state that was "right out of the box."

44.     After gaining an understanding of T-Scan's needs, the engineer stated clearly that the portions of the software application T-Scan sought, and claimed by BPA to not be able to be done in Alfresco, actually could have been done in Alfresco.

45.     As of December 9, 2009, T-Scan has paid BPA more than $73,649.

46.     As of December 9, 2008, T-Scan has paid Alfresco at least $60,000.

47.     On February 24, 2010, by and through the law offices of The Chugh Firm, BPA sent T-Scan a demand for $101,631 for alleged services rendered that remain unpaid. In the demand letter, BPA generally alleges that these fees are a result of "changes in scope" of the original project.

48.     To date, BPA has not delivered a single useable piece of software to T-Scan.

49.     After terminating its business relationship with BPA for its breaches and other torts, T-Scan engaged the consulting firm of Reva Solutions ("Reva"), a company that has an office located in Seattle.

50.     Reva is a member of Alfresco's PNP program.

51.     Defendant Alfresco knew of T-Scan's contractual relationship and business expectancy with Reva.

52.     T-Scan, in its demands to Alfresco, and having already paid Alfresco in an amount of at least $60,000, did not renew its license for the Alfresco software for the reason that T-Scan had already paid Alfresco $60,000 for two (2) years licensing, from which T-Scan received no benefit.  Rather, T-Scan demanded that Alfresco provide an additional license period of two (2) years for future use of the software.

53.     According to the terms of the licenses already paid for by T-Scan, T-Scan is allowed to use the versions of the Alfresco software that it has already received without

54. When T-Scan refused to pay Alfresco the additional licensing fees, Alfresco informed Reva that Reva could not support T-Scan unless T-Scan paid additional license fees to Alfesco, and that support by Reva would be a breach of Alfresco's and Reva's contractual relationship.

55. By this time, T-Scan had already paid Reva approximately $6,000 to begin work on the project.

56. By informing Reva that Reva could not support T-Scan, Alfresco intended to interfere and did interfere with the business relationship between T-Scan and Reva.

57. As a result of Alfresco's threats to Reva, Reva informed T-Scan that it could no longer support T-Scan and could not develop the software that T-Scan requires for its business operations.

58. As a result of the loss of Reva's support, T-Scan is unable to complete the software development it requires, and is being damaged by its inability to grow its business as anticipated and to provide T-Scan customers with access to their records via a Web-based facility.

59. As a result of Alfresco's prohibiting of its PNP members, T-Scan is unable to mitigate the damages it has suffered by Alfresco's and BPA's actions and inactions.

## IV.  CLAIMS FOR RELIEF

### CLAIM I

### FRAUD IN THE INDUCEMENT OF THE CONTRACT

60. Plaintiff hereby repeats and realleges paragraphs 1 – 59 as though fully set forth herein.

61. As stated, *supra*, Alfresco requires that "[a]ll System Integrators have trained and certified Alfresco consultants on staff."

62. When negotiating with T-Scan for the project, BPA knew that Alfresco imposes this requirement on all members of its Partner Network Program.

63. When negotiating with T-Scan, BPA knew that it did not have a trained and certified Alfresco consultant on staff.

64. By holding itself out to T-Scan as an Alfresco Partner, BPA represented to T-Scan that it had a trained and certified Alfresco consultant on its staff.

65. By referring T-Scan to BPA, Alfresco represented to T-Scan that BPA had a trained and certified Alfresco consultant on its staff.

66. BPA knew that it did not have a trained and certified Alfresco consultant on its staff and thereby knew that it was misrepresenting to T-Scan that it did have a trained and certified Alfresco consultant on its staff.

67. While holding out BPA as an Alfresco partner, Alfresco knew that its PNP program required that BPA have a certified and trained Alfresco consultant on its staff and further knew, or should have known, that BPA did not have a certified and trained Alfresco consultant on its staff.

68. By holding out BPA as an Alfresco Partner, Alfresco intended for T-Scan to believe that BPA had a trained and certified Alfresco consultant on its staff in order to entice T-Scan into a contractual relationship with Alfresco and to license Alfresco's software.

69. By holding out BPA to be an Alfresco Partner, Alfresco deceived T-Scan into believing that BPA had an Alfresco trained and certified consultant on its staff and T-Scan justifiably relied to its detriment on Alfresco's misrepresentations when it agreed to enter into the contractual relationships with Alfresco and BPA.

70. As a result of BPA's misrepresentations and failures to perform, along with Alfresco's misrepresentations to T-Scan, T-Scan has been injured in an amount to be proved at trial, but in excess of $75,000.

FIRST AMENDED COMPLAINT - 9

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

## CLAIM II

## BREACH OF CONTRACT

71. Plaintiff hereby repeats and realleges paragraphs 1 – 70 as though fully set forth herein.

72. When T-Scan entered into the contract with Alfresco to license Alfresco's software, T-Scan reasonably relied on Alfresco's implied covenants of good faith and fair dealing.

73. By Alfresco holding out BPA as a member of and, implicitly, a member in good standing Alfresco held out BPA as having a trained and certified Alfresco engineer on its staff .

74. Alfresco nevertheless, requested and was paid at least $60,000 by T-Scan for licensing Alfresco's software. Consequently, Alfresco has breached its commitments of good faith and fair dealing to T-Scan under the software licensing contract.

75. As a result of that breach, T-Scan has been injured in an amount to be proved at trial.

## CLAIM III

## INTERFERENCE WITH BUSINESS RELATIONSHIPS

76. Plaintiff hereby repeats and realleges paragraphs 1 – 75 as though fully set forth herein.

77. T-Scan had a valid business relationship and business expectancy with Reva.

78. Alfresco knew of the business relationship and expectancy existing between Plaintiff T-Scan and Reva and provided T-Scan with documents showing Alfresco's knowledge of that business relationship and expectancy.

79. When T-Scan refused to pay additional license fees, Alfresco intended to interfere and did interfere with the business relationship and expectancy existing between

1  T-Scan and Reva by informing Reva that Reva could not support T-Scan or provide new
2  services to them.
3      80.    Due to Alfresco's interference with the business relationship and expectancy
4  between T-Scan and Reva, T-Scan's development of the software solution it requires has
5  been thwarted by Alfresco.
6      81.    Alfresco's interference has damaged and continues to damage T-Scan in an
7  amount to be proved at trial.

## VI.  PRAYER FOR RELIEF

9  WHEREFORE, Plaintiffs respectfully request judgment as follows:
10      1.    That the Court finds that documents and conduct of the parties prove that
11  contracts exist among the parties;
12      2.    That the Court find that BPA breached its contract with T-Scan when it
13  failed to create and deliver software that functioned;
14      3.    That the Court find that BPA breached its contract with T-Scan when it
15  failed to produce software on the time schedule agreed;
16      4.    That the Court find that Alfresco made a representation of material fact
17  when they told T-Scan that BPA was a qualified member of the Alfresco Partner Network
18  Program when, in fact, BPA did not have a trained and certified Alfresco person on its
19  staff;
20      5.    That the Court find that the representation was false;
21      6.    That knowing that BPA was not a member in good standing of the PNP, and
22  by nevertheless demanding and receiving at least $60,000 from T-Scan in licensing fees,
23  Alfresco breached its implied covenants of good faith and fair dealing in its licensing
24  contract with T-Scan;
25      7.    That the Court finds that Alfresco intended for T-Scan to rely on their false
26  representations;

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1    8.    That the Court find that T-Scan justifiably did rely on the Alfresco's false

2 representations when it agreed to enter into the contractual relationships with it and BPA;

3    9.    That the Court find that T-Scan was injured thereby;

4    10.   That the Court find that the Defendant breached its covenants of good faith

5 and fair dealing with T-Scan;

6    11.   That the Court order the contract between the parties affecting T-Scan be

7 rescinded;

8    12.   That the Court order the Defendant to remit to T-Scan those amounts that it

9 has received from T-Scan and that BPA has received from T-Scan in T-Scan's reliance on

10 Alfresco's misrepresentations in an amount to be proved at trial;

11   13.   That the Court order the Defendant to remit to T-Scan its losses suffered as

12 a result of the hours of manpower required of T-Scan to train the BPA personnel details

13 about T-Scan's business in an amount to be proved at trial;

14   14.   That the Court order the Defendant to remit to T-Scan its losses suffered as

15 a result of the hours of manpower required of T-Scan to test the BPA software in an

16 amount to be proved at trial;

17   15.   That the Court find that a business relationship and expectancy existed

18 between T-Scan and Reva;

19   16.   That the Court find that Alfresco intended to interfere with and did interfere

20 with the business relationship and expectancy between T-Scan and Reva;

21   17.   That the Court find that Alfresco's intentional interference with the business

22 relationship and expectancy between T-Scan and Reva damaged T-Scan;

23   18.   That by this interference, Alfresco damaged T-Scan and continues to

24 damage T-Scan by thwarting T-Scan's attempts to develop the software solution for

25 T-Scan's business and its attempts to mitigate the damages it has suffered and is suffering;

26

FIRST AMENDED COMPLAINT - 12               **CARPELAW PLLC**
                                           2400 NW 80th Street #130
                                           Seattle, Washington 98117
                                           (206) 624-2379 - (206) 784-6305 (fax)

1      19.    That the Court order Alfresco to pay T-Scan the amount of damages it has suffered by not being able to provide the Web-based services to its customers;

20.    That the Court order Alfresco to pay T-Scan the losses it has suffered by not being able to mitigate its damages;

21.    That the Court order Alfresco to pay T-Scan the amount equal to that paid by T-Scan to Reva;

22.    That the Court order Defendant to pay to T-Scan both the costs of this suit and the reasonable attorneys' fees incurred by T-Scan in investigating and prosecuting this action.

23.    That the Court grant to T-Scan such other and additional relief as is just and proper.

## VI.  JURY DEMAND

Plaintiff respectfully demands a jury trial.

Dated this 16th day of February 2011.

                Respectfully submitted,

                CARPELAW PLLC

                *s/ Robert S. Apgood*
Robert S. Apgood, WSBA #31023
Attorney for Plaintiffs
CARPELAW PLLC
2400 NW 80th Street #130
Seattle, WA 98117-4449
Telephone: (206) 624-2379
Facsimile: (206) 784-6305
Email: rob@carpelaw.com